Counsel do we have you on the line? Yes, your honor. Yes, your honor. Yes. All right. So we've got two lawyers arguing for the appellant. And you're going to split it. What's the plan? No, your honor, seven minutes for opening and then my co. Oh, I'm sorry. So a different lawyer is going to argue just the rebuttal. Is that right? Correct. Correct. Okay. All right. So Miss Pogan, you're, you're going to argue the first part for seven minutes, correct? Yes, your honor. Okay, so we'll give you three uninterrupted and then we'll jump in. You may proceed. Okay. Catherine Pogen from Miss Jane Doe. May it please the court. There are many sacrifices that service members make, but being barred from seeking remedy when the government's negligence leads to their rape is simply not one of them. This court should transfer missed those claims to the federal circuit, which has exclusive jurisdiction as a matter of both statute and precedent. Congress has provided remedies for missed those injuries under both the FTCA and the little Tucker act and her claim should be allowed to proceed. After promising this dough and education in exchange for military service, West Point's negligence fostered sexual violence. It cultivated a hostile educational environment. Male cadets chanted about acts of sexual violence as a matter of course, during team building exercises in full view of university administrators. West Point told women cats that it was their responsibility to prevent the spread of STDs yet encouraged men to see if any chance they could for sex. But to recognize that misto was subject to a hostile environment. You need not even take her word for it. The department of defense's own analysis found that West Point was not in compliance with God policy on sexual violence and prevention. Nearly 10% of women cadets indicated that they were subject to sexual assault in 2010 alone. More than half said that they had been sexually harassed and a 4% said that they were subject to sexist behavior on campus. West Point's conduct was not merely inconvenient or offensive to misto. It was dangerous. And when she was ultimately raped on campus by a fellow cadet, West Point failed to respond in accordance with God's mandatory directives and instruction policies. It lacked the discretion to ignore. West Point precluded misto from receiving the fruits of the contract. It interfered with her own ability to perform and violated her reasonable expectations. Because an education is more than bare access to a classroom. Misto's claim is not novel here. The Supreme Court recognized in Davis that sexual harassment can be so severe, pervasive and objectively offensive that it can deprive victims of access to the educational opportunities or benefits provided by a school. The government is presenting you with a heads we win, tails you lose theory of contracts. Excuse me, you have one more minute. Thank you. One that defies both basic principles of fairness and basic principles of contract law. The United States regularly enforces educational service agreements just like mistos against students, including against former West Point cadets. If the United States can sue on the contract, misto can sue on the contract too. But importantly, defendant is not only asking you to find that misto has no remedy for the injuries incurred by the government's breach of the implied promise or by its negligence. It's asking that you be the first court of appeals in the nation to hold that in the statutory context where Congress has expressly waived sovereign immunity for both contract and tort claims, that an institutionally perpetuated culture of violent misogyny at service academies, even when it culminates in the rape of a cadet off duty after hours is incident to service. Rather than extend the Ferris doctrine, this court can and should transfer this case to the federal circuit. But I see that my three minutes are up, so I'm happy to pause here for questions or to continue. Great. Thank you, Judge Winter. Do you have any specific questions for Ms. Poitras? No, I don't. Thank you. And Judge Wesley, do you have any questions? Yes, I do. In the context of your argument that Ferris doesn't apply, I take it that... And with regard to the discretionary doctrine, I take it that you think that there are specific mandates that don't have any wiggle room in them for... I don't mean wiggle room, but where there are judgment calls that arise out of the mandate that call for the exercise of discretion or the assessment of public policy. Can you delineate several of those for me? Certainly, Your Honor. So for instance, DOTI 649502 required West Point to immediately assign a victim advocate to Ms. Doe. She was never assigned a victim advocate. DOD Directive 6495 directed that West Point was to ensure survivors have access to timely appropriate treatment and service, including ongoing non-clinical support. Ms. Doe only received a single email from a counselor. By definition, a single email is simply just not ongoing care. These were very specific directives that West Point failed to adhere to. Additionally, if you look at the DOD analysis of West Point's compliance, West Point had failed to provide annual sexual assault and prevention training to West Point cadets in violation of DOD policy. They only provided consent training to students who were in their third year. DOD's report specifically noted that... Excuse me, could I ask you, was there a specific mandate of the training at any particular year of their attendance at West Point, or was there a general mandate with regard to the training itself? The DOD analysis indicated that not providing annual training, so training in every year that the Anything else? No. Could you hear me? Oh, I'm sorry. I didn't understand that you were asking me if anything else. I thought that was Judge Sullivan asking you if there was anything else. No, no, no, no, no. I'm sorry. It was me. I apologize. That's the unartfulness of this. That's okay. We don't recognize each other's voices. You wouldn't. I guess maybe I would ask you to just recognize that we're not writing on a blank slate here, right? We've got the first time through the Court of Appeals in Doe 1 on this, and it seems as though you're really asking us to agree with Judge Chin's dissent, but doesn't the precedent of this circuit compel the outcome here with respect to the FPCA too? We don't believe so, Your Honor, not for the purposes of the FTCA claim. This Court's decision in Doe 1 specifically noted that Congress had not provided a remedy for Ms. Doe's constitutional claims, but here Congress has provided a remedy, both under the FTCA, but also under the LTA. We do believe that her contract claim is distinct from, you know, importantly, we don't know of any case, nor has the government ever cited a case that has applied Ferris in the Little the crucial difference in the FTCA context between remedies provided under the FTCA and provided through Bivens remedies. After Ziegler, obviously, extending Bivens is a disfavored judicial activity, whereas the Ferris Doctrine does not create a service member bar for the purposes of FTCA claims. There are some class of claims. But incident to service is the term being, you know, applied for both Bivens and FTCA, right? That's correct, Your Honor. And we have a different outcome for the FTCA than we have for Bivens, a Bivens action. Even though it's the same product, the same, everything else is lines up exactly the same. It would be a different outcome solely as a result of the cause of action asserted, correct? Correct, Your Honor. Although we believe that that is consistent with precedent. So the Second Circuit, this court in Hernandez v. Lattimore back in 1979, expressed that the FTCA has a broader remedial scope than Bivens actions. Stanley itself recognized that courts might be freer to intervene in military affairs where Congress has expressly provided for a remedy. The government in their briefing makes some hay over the language about the FTCA being as extensive, about the Ferris exception being as extensive in the FTCA context and the Bivens context. But the question before the court in Stanley was not whether Ferris is co-extensive for the purposes of Bivens and the FTCA. Rather, the question before that court was given that Stanley's FTCA claim was barred. Did it follow that his Bivens claim health had been barred? And if you look at footnote five of Stanley, we think that the language of the decision supports our reading of that case. There Scalia noted that he was authoring Stanley, even though he had dissented in Johnson and FTCA case because he saw the remedial scope of the two questions as being distinct. And so if Stanley stood for the proposition that the government asserts that it stood for, Scalia wouldn't have authored it as he did. I want to just, while I have time, ask you about is, of course, we had a two-judge motion panel, Judge Lynch and Judge Lohier, who already dealt with the motion to transfer this back to the federal circuit. And they passed upon the claim here, right, whether there's a substantial federal question. So, I mean, doesn't that constrain us a bit as well? A lot of the case is a discretionary doctrine. And here we think there are overwhelming reasons to not follow in the footsteps of the motion panel. For one, it would entrench a circuit split. No other court has held that a substantial federal question applies to Little Tucker Act claims. The federal circuit, the court that is vested with exclusive jurisdiction over those claims under both statute and Supreme Court precedent in U.S.C. Horry has conclusively rejected that proposition. In fact, the government in their briefing cites the dissenting opinion in Jan's helicopter because Jan's court, they expressly rejected that test. But even if the substantial federal question test were appropriate, we believe that Ms. Doe would meet it. The question for substantial federal question is not whether the claim ultimately has or lacks merit, but whether or not it presents a claim that is so frivolous, so outside the bounds of appropriate legal theories that it doesn't even merit adjudication. This court has previous... In essence, what Judge Lynch and Judge Laurier concluded? They also noted at oral argument that this court, when it came to the merits, might go a different way. But also this court seems to have at least some doubts about whether or not that's the case, given that it denied the government's motion for summary affirmance. But importantly, Your Honor, the United States regularly sues on this very same contract against students. The agreement to serve in Wilhelmus v. Guerin was not only substantially similar to Ms. Doe's agreement to serve. It was the very same document, but for the names that appeared on it. The United States argues that these agreements to serve are enforceable contracts and that the terms they're in are contracts that students are obligated to as a matter of law. If the United States can sue on the contract, Ms. Doe can too. All right. Any other questions for Ms. Pojan? Okay. Thank you very much. No, not for me. Thank you. We'll now hear from Mr. Connolly. Yes. Good afternoon, and may it please the court, Christopher Connolly from the U.S. Attorney's Office on behalf of the United States. This court has already decided the issues presented by this appeal. First, the court's reasoning and its prior opinion concerning Ms. Doe's Bivens claims applies with equal force to her FTCA claims. And that's because the Supreme Court has made clear that intramilitary immunity is as extensive in the Bivens context as in the FTCA context. In both contexts, the doctrine bars claims that are incident to military service. And the test is the same under both contexts. In fact, in Doe 1, this court described the test as follows. And they were quoting from United States v. Scheer, which is an FTCA case. The court said, when a claim on its face requires the civilian court to second-guess military decisions or calls into question the management of the military, we are at the core of intramilitary immunity's concerns. And the courts must dismiss the claim. That's the test. That was the test for the Bivens claims, and that's the test for the FTCA claims. And because those claims arise from the same basic nucleus of factual allegations, assert essentially the same injuries, these FTCA claims are barred for the same reasons as the Bivens claims were barred. In the alternative, as the district court held, these claims fall within the discretionary function exception to the FTCA because they involve discretionary acts that are susceptible to policy analysis. With respect to Ms. Doe's Little Tucker Act claim, the insubstantiality of that claim is the law of the case. In fact, it's the law of the case twice over. This court determined that the Little Tucker Act claim was not the basis for the district court's jurisdiction. And in commencing this appeal, at the outset of this appeal, the federal circuit likewise held that the district court lacks jurisdiction based on the Little Tucker Act. Thank you. And transferred this appeal back to this court. This court has explained that it will only disturb prior rulings in extraordinary circumstances, such as when that ruling is clearly erroneous. The finding here by both the second circuit and the federal circuit that the Little Tucker Act claim does not raise a substantial federal question is not clearly erroneous. Indeed, if there were any court that would have found that the initial motions panel's ruling ran afoul, clearly ran afoul of federal circuit case law, it was the federal circuit.  In addition, on the merits, the Little Tucker Act claim also fails, most notably because the Little Tucker Act itself bars claims that are simply recharacterizations of tort claims. And here, in sum and substance, Ms. Stowe's Little Tucker Act claim is a restatement of the claims that she brings under the FTCA. So I thank the court for this time, and I'm happy to take any questions. All right. Thank you. Judge Winter, any questions for Mr. Connolly? No, I have no questions. And Judge Wesley? What do you make of your opponent's argument that when I asked her about the mandates that she identified several things, one of them the requirement of DOD 6495.01 that when notified of reported sexual assault that she was to immediately have assigned a victim's advocate, and that was not done. What level of discretion is necessary with regard to that? And why is that somehow inherently military as opposed to just recognizing that a young lady who's been subjected to a sexual assault needs someone to talk to and to deal with the circumstances of it? How is that? How does it A, have any discretion to it, and B, how is it inherently a military matter? Well, Your Honor, for the discretionary function exception analysis, I don't think the question of whether or not it's a military matter really applies. So I agree with that. I've mixed both of them in together. So let's start with discussion. Is there any discretion in whether one assigns a victim's advocate to someone who reports a sexual assault? Is there any discretion in that? The directive says that someone needs to be assigned. Now, as Ms. Doe concedes, a sexual assault counselor reached out to her following her report of the incident. And she herself says, well, it's unclear whether or not that person was reaching out essentially in fulfillment of that obligation as a victim advocate. But her other concerns with respect to that directive have to do with the immediacy of the contact and the type of services that were offered to her. And I mean, the issue of whether or not something is immediate, I think, is inherently there's room for disagreement or difference of opinion. More broadly, with respect to these directives, what the DOD directives obviously are meant to ensure is that the department, including a military base such as West Point, take steps and put in place a structure for preventing, investigating, and punishing sexual assault. How that's done in the details is left to the military administrators. And what's really at issue here is Ms. Doe's disagreement with the policies and procedures that were put in place by the officials at West Point. With respect to your second, with respect to your, would you like me to address the inherently military? Yeah, I don't understand how, you know, I have a hard time with how Ferris kind of fits over top of that aspect. It fits over, it fits over top of it based on the incident to service rule as articulated in United States v. Scheer, which is the FTCA case that the panel and Doe won cited for the service rule. I'm very familiar with Scheer. Yes, of course. So the military discipline or the military decisions that the court would be required to second guess in this instance are the decisions concerning how best to prevent, investigate, and punish sexual assault at West Point. Those were decisions that were made by high-ranking military officials who were in charge of the military base at West Point and had responsibility for the training and oversight of the cadets at West Point. And that's the inherently military decision-making aspect of these claims. That's what Ms. Doe is challenging, that the processes and procedures that were put in place to govern sexual assault issues at West Point were inadequate. And that would cause this court to have to second guess those military decisions. And that is why these claims are on their face incident to military service and barred by inter-military immunity under that FTCA analysis, which is co-extensive with the Bivens analysis that this court already applied in Doe 1. Is that without limit? I mean, if the Commandant had decided that they were not going to punish sexual assault cases, even those that were proven, would that be not reachable and not justiciable in a federal court because it's inherently a military decision? Your Honor, the case law teaches that it would be. I mean, as Your Honor being well aware of Shearer, in Shearer, the issue was the murder of a serviceman. In other FTCA cases and Bivens cases that apply the doctrine of inter-military immunity, there were equally disturbing underlying facts. But in all of those cases, pardon me? The Stanley, for example. In Stanley, exactly. If memory serves, that was like the giving LSD to service members. Right. Protective clothing and he got LSD instead. Exactly. And all of these underlying factual allegations are very disturbing. But all of them, what they have in common is that bringing claims based on those disturbing factual allegations would require the court to second-guess military decisions and discipline and how those incidents were handled within the military. And that's what the unbroken line of case law from Ferris through to this court's Doe 1 decision squarely holds courts cannot do. All right. Thank you. Thank you. All right. Thank you. No further questions. So we'll now hear three minutes of rebuttal. Thank you, Your Honor, and may it please the court. Jade Ford for Appellant Jane Doe. There are three brief points I would like to make. First, Judge Sullivan, earlier you asked an important question about the motions panel ruling and law of the case. The Supreme Court has said in Christensen that, and I quote, adherence to law of the case will not shield an incorrect jurisdictional decision. And that is precisely what you have here, an incorrect jurisdictional decision. It is telling on the substantial federal question test that the government here today and in their briefing does not contest that Misto's Little Trucker Act claim would in fact satisfy that standard as laid out by the Supreme Court in Bell v. Hood. And so this court should transfer to the federal circuit for full adjudication of her claim. Second, with respect to the discretionary function exception, Judge Wesley, you asked about the mandatory policies involved here. Now the government is trying to claim that the counselor who met with Ms. Doe was the victim advocate. But DOD instruction 64-9502 makes clear that that counselor cannot be the victim advocate. So here West Point was required to have provided Ms. Doe with a separate victim advocate to provide ongoing support after her rape by DOD instructions. And they failed to do that. Finally, none of the cases cited by the government in terms of the incident to service test involved a student on a campus thousands of miles away from any active battlefield where the primary injury is entirely unrelated to training. Where DOD itself has found that its own rules have been violated. Ferris has never been extended so far in the FTCA context and this court should not do so here. Does the fact that it's a college campus as opposed to a fort in North Carolina, which is also thousands of miles from any battlefield make a difference in your view? Your Honor, we think that's an important factor here that the cadets were also serving as students and that is one of the primary functions that they're at West Point. And so if you're asking when the FTCA created, when the Congress created the FTCA and explicitly chose to include the military, and that's 28 U.S.C. 2671, what did they mean to enable? They meant to enable these types of cases. You have one more minute. Thank you, Your Honor. They meant to enable these types of cases that are far removed from, as Judge Wesley was suggesting, things that involve military orders and command. And so this court should not extend and interpret Ferris so broadly. If there are no further questions, Your Honor, taking a step back- This is Judge Winter. Did not West Point extend its regulations to the backs or to the so-called dormitories? Your Honor, the regulations we are referencing here are the ones that cover West Point and other service academies. That's correct. No, I'm talking about regular, yeah, but there was a curfew. There was a rule against drinking. They had extended their regulations to the dormitories. That's correct, Your Honor. And Ms. Doe was actually, in this case, when she was sexually assaulted, she and the fellow cadet were in violation of those rules. So those actually make clear why this case is unrelated to the military training that she was involved in- How does it make it clear? Your Honor, because her actions here were not within the scope of any sort of military training. She was walking after hours in what she thought was originally a social context at which point she was sexually assaulted. And so that is beyond the scope of what West Point envisioned would be part of its military training. And that's precisely why this court defined it as not in civil service. She was not on a pass, right? I'm sorry, Your Honor, can you repeat that? She was not on a pass. No, Your Honor, she was on campus. And wasn't she... But why aren't dormitories at West Point like barracks? Your Honor, because there, the cadets are engaged in a four-year college education primarily. So that's very different from when you're on active duty living in barracks. You attend classes. You want us to tell West Point that it can't have rules like a curfew? No, Your Honor. No, Your Honor. West Point should by all means continue those. The question is whether or not Ms. Doe under the FTCA can bring her claim. But the reason for imposing them is military. The discipline. That's correct, Your Honor. But the incident to service test asked whether or not the injuries involved were incident to service, not whether or not the regulations that may or may not have been governing the environment were incident to service. Because of course those would be. But here, Ms. Doe, when she was sexually assaulted, her assault was not governed by those regulations. That's an entirely separate issue. So we completely agree with you. It's important for West Point to maintain those rules and regulations. But Congress has expressly authorized that individuals like Ms. Doe can bring tort claims against the U.S. government in this sort of situation. Okay. Thank you. All right. Just to briefly conclude, it's important to recognize what the government is asking this court to do here. They're asking this court to conclude that there is no remedy whatsoever for Ms. Doe, but simply because she chose to enroll in West Point and committed to serve our country, that she gave up her right to a tort remedy for her rape caused by the government's negligence, and that she has no contract claim under the agreement to serve when the government itself has argued in court multiple times that that agreement is a binding contract. This court should instead reverse the jurisdictional holding and transfer to the federal circuit for full adjudication of Ms. Doe's Little Tucker Act and FTCA claims. Thank you, Your Honors. Okay. Thank you very much. Thanks to all of you. It was very well argued. We will reserve decision. We have another case on submission and some motions, but we'll reserve on those as well. So let me ask the deputy to adjourn the court.